**FILED**

**08/07/2023**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DYLAN MARSHALL, | ) |
| *Plaintiff.* | ) |
| | ) Case No. 3:23-cv-119-MPB-MJD |
| | ) Case No. _____ |
| V. | ) |
| | ) |
| | ) |
| CITY OF EVANSVILLE, INDIANA; | ) |
| EVANSVILLE POLICE DEPARTMENT; | ) |
| SERGEANT SAM SEDORIS, in his | ) |
| official and individual capacity; | ) |
| OFFICER CAGE STREET, in his | ) |
| official and individual capacity; | ) |
| OFFICER CHRISTIAN, in his official | ) |
| and individual capacity; AMERICAN | ) |
| MEDICAL RESPONSE INC.; EMERGENCY | ) |
| RESPONDER STACY STEELE, in her | ) JURY TRIAL DEMANDED |
| official and individual capacity; | ) |
| ADVANCED EMERGENCY MEDICAL | ) |
| TECHNICIAN BRIAN CONNER, in his | ) |
| official and individual capacity, | ) |
| *Defendants.* | |

## COMPLAINT

Plaintiff, Dylan Marshall, complains of Defendants City of Evansville Police Officers Cage Street, Off. Christian, Sgt. Sam SeDoris (collectively), the "Police Defendants"), American Medical Response, Inc., Emergency Responder (ER) Stacy Steele and Advanced Emergency Medical Technician (EMT) Brian Conner (collectively, the "Emergency Defendants"), as follows:

### INTRODUCTION

1. Plaintiff, Dylan Marshall, complains of Defendants City of

Evansville Police Officers Cage Street, Off. Christian, Sgt. Sam
SeDoris (collectively), the "Police Defendants"), American Medical
Response, Inc., (ER) Stacy Steele and (Advanced EMT) Brian Conner
(collectively, the "Emergency Defendants"), as follows:

### JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. §1983 to redress
Defendants' deprivation of Plaintiff's rights secured by the
constitution.

3. This court has jurisdiction over Plaintiff's federal claims
pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over her
State Law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper under 28 U.S.C. §1391(b). On information and
belief, the Defendants reside in this judicial district, and the
events and omissions giving rise to Plaintiff's claims occurred within
this judicial district.

### PARTIES

5. Plaintiff Dylan Marshall, is an adult citizen of the United
States and a resident of the State of Illinois; and has suffered from
the effects of Attention Deficit Hyperactivity Disorder (ADHD) her
entire life, but has been able to manage the symptoms without
medication, until she became a victim of the emotional, physical and
mental distress caused by the Defendants' misconduct mentioned herein
which is ongoing and everlasting.

6. Defendant City of Evansville is an Indiana Municipal Corporation
and is and/or was the employer of each of the Defendant Officers. The
City of Evansville is liable for the acts of the Defendant Officers,
which were undertaken within the scope of their employment for The
City of Evansville, Indiana (the "city") operates, manages, directs,
and controls the EPD.

2

7. At all times relevant hereto, Defendants Officer Christian, Officer Cage Street and Sergeant Sam SeDoris were police officers in the Evansville Police Department acting under color of law and within the scope of their employment for the City of Evansville. The supervisory defendants facilitated, condoned and approved the constitutional violation committed by their subordinates.

8. Defendant American Medical Response, Inc., is a LP Corporation and is and/or was the employer of each of the Emergency Defendants. American Medical Response, INC., is liable for the acts of the Emergency Defendants, which were undertaken within the scope of their employment for the Emergency Medical Services LP Corporation.

9. Emergency Defendants Stacy Steele (ER) and Brian Conner (Advanced EMT), at all relevant times hereto, are an Emergency Responder and Advanced Emergency Medical Technician, employed by American Medical Response (AMR) acting under color of law and within the scope of their employment for the State of Indiana. The supervisory defendants facilitated, condoned and approved the constitutional violations committed by their subordinates.

## **FACTUAL SUMMARY**

10.   On September 1, 2022, Plaintiff, Dylan Marshall, started the day off by taking her daily prescribed allergy medicine prior to receiving an invitation to hang out with friends at bars on Franklin Street in Evansville, Indiana.

11.   On September 2, 2022, at approximately 12 A.M., Plaintiff left the bar to follow a friend home in her vehicle. As she drove away from the bar, Plaintiff became extremely lethargic and actually passed out while stopped at a stoplight on the east bound exit of Lloyd Expressway to Green River Road.

3

12.   Unbeknownst to Plaintiff, she was experiencing the side-effects (drowsiness and dizziness) as a result of her consuming alcohol after taking cetirizine, an antihistamine prescribed to Plaintiff by her doctor to treat her severe allergies. (See Ex. A and B Attached)

13.   While Plaintiff was stationary at the stoplight, a witness, Shanda Brown, called 911 to report a white female unconscious behind the wheel of her vehicle, due to Plaintiff's extended stop at the stoplight, and her unresponsiveness to Ms. Brown's knocking on her window.

14.   Soon thereafter, Officer Cage Street from Evansville Police Department arrived on the scene and signaled for American Medical Response (AMR) to respond to the scene in relation to the unknown health and welfare of Plaintiff.

15.   While Plaintiff's vehicle was running, doors locked, and all windows were rolled up, Officer Street approached the vehicle and knocked on the window briefly.

**Facts Garnered From The Body Worn Camera Audio and Dashcam Footage
Contradicting Officer Defendants' Probable Cause Affidavits**

16.   The body camera footage shows that at 00:37:31 Officer Street began knocking on the driver window of Plaintiff's vehicle. In fact, the camera footage reveals that between 00:38:56 to 00:39:40, Officer Street knocked on the driver side window and made attempts to open the vehicle doors.

17.   Per the body worn camera footage and Dashcam footage, Officer Street knocked on the windows of Plaintiff's vehicle for a total of 2 minutes and 9 seconds.

18.   At 00:40:20, the footage shows that Officer Street is on his

cell phone with his direct supervisor Sergeant Samuel Sedoris, while
simultaneously, he uses his flashlight to look into the driver side
window of the vehicle.

19.   According to the footage, Sergeant Sedoris instructs street
to, "Bust the window, that's fine."

20.   At 00:44:15, an AMR ambulance service arrives on the scene,
and a female (ER) Stacy Steele jumps off the ambulance and attempts,
without success, to bust the passenger side window. As a result,
Officer Street takes tool from (ER) Stacy Steele, and successfully
breaks the passenger side window at 00:44:29.

21.   After breaking the window, Officer Street reaches in the
passenger side window to unlock the doors. Street then opens the
passenger side door, reaches and leans across Plaintiff's vehicle to
put it in park, and turn the vehicle off.

## Probable Cause Affidavits Are Fabricated To Incriminate/ Charge Ms. Marshall

22.   Officer Street states in his probable cause affidavit that
after opening the door, he smelled a strong odor of an alcoholic
beverage emitting from Plaintiff's breath, and that Plaintiff was
still asleep at this time. He says he then began to shake Plaintiff on
her left arm, where she was eventually able to wake up. He stated that
Plaintiff had red glossy eyes at this time, and he asked Plaintiff to
step out of the vehicle several times, where Plaintiff resisted and
refused to leave the vehicle. Street alleges that Plaintiff's body
tensed up as he began to try and pull her out of the vehicle, and then
Plaintiff attempted to dive deeper into the vehicle, where he used
force at this time to make her exit the vehicle.

## Police Misconduct/ Use Of Excessive Physical Force

23.   Contrary to Officer Street and Sergeant Sedoris' probable

cause affidavits, the body worn camera footage shows at 00:44:49 Officer Street shut the passenger side door and walked to the driver side. He immediately opens the door and grabs Plaintiff's left arm, then begins to continuously tug Plaintiff.

24.   After a lot of aggressive and loud demands directed at Plaintiff, Officer Street aggressively tugs and pulls Plaintiff's arm more forcefully and says, "Come on, get out of the car."

25.   At 00:45:40 Officer Street tugs more aggressively and Plaintiff says, "ow, ow, ow!" In response to the excessive force that was being inflicted upon her person. Officer Street then pulls Plaintiff from the vehicle and begins to drag Plaintiff away from the vehicle. While being dragged, the pain from the force being inflicted upon the Plaintiff is obvious when she yells, "Ow! Oh my god!! (in a strained, fearful manner)".

26.   During this time, Officer Christian arrived on the scene, but instead of intervening, he instantly assisted Street as he dragged the Plaintiff.

27.   At 00:45:43 Plaintiff was handcuffed by officers Street and Christian while she was seated on the ground. And even though Street claims to have placed Plaintiff in handcuffs due to unknown circumstances, they chose to use excessive force during this process.

28.   Even still, Officer Christian used his hands to apply pressure to Plaintiff's shoulders to revoke movement.

## Ms. Marshall's Non-consenual Pat-down Search Per The Body Worn Camera Footage

29.   Per the body-worn camera footage, without soliciting or

obtaining Plaintiff's consent to conduct a pat-down search, at 00:46:11 Officer Christian asks Plaintiff if she has any weapons on her, then searches Plaintiff's pockets.

30.   At 00:46:21 Officer Christian asked Plaintiff her name and Plaintiff told him, "My name is Dylan." But because Plaintiff presents and portrays herself as a masculine homosexual female,(See Ex. C Attached) Officer Christian assumed she was lying about her name. Officer Christian asked Plaintiff if "Dylan is [her] legal name?" Officer Christian's discriminatory actions here will become more obvious below.

31.   Shortly thereafter, Officer Christian's excessive force upon Plaintiff continued when at 00:46:51, he placed Plaintiff in a sitting position on the AMR cot. In fact, footage reveals at 00:47:06, Officer Christian uses additional force to roughly position Plaintiff onto cot, pushing her back-forcing her to lay on her hands while she is handcuffed - causing Plaintiff increased pain.

32.   The pain from the police misconduct caused Plaintiff to exclaim in pain, "my hands are behind my back, my hands are behind my back, my hands!" 00:47:15.

### Illegal Vehicle Search Per Body Worn Camera Footage

33.   At 00:47: 27 Officer Street goes to the front driver side door to begin his search of the vehicle.

34.   Shockingly, at 00:47:44, an unknown male firefighter leans into the passenger side front door of Plaintiff's vehicle and begins searching inside the glovebox.

35.   While Officer Street is searching the vehicle, at the same time, the firefighter is actively participating in the search of Plaintiff's vehicle and oddly, at 00:47:55 Officer Street keys up on

his radio and says, "It's going to be a refusal." This decision was caused not as a result of a test refusal by Plaintiff, but after comments made by the firefighter who states: "Imagine that, she wasn't drinking (chuckle)." (See Ex. D & E Attached)

36.    To note, at this same time on Officer Christian's BWC footage, who is with Plaintiff at time of alleged refusal, his footage shows no such mention of offering or the denial of any means of field sobriety from himself or Plaintiff.

37.    Beside the obvious fact that alcohol was found in Plaintiff's vehicle, in his affidavit, Street alleges he saw the alcohol prior to entering Plaintiff's vehicle. However, per the BWC footage, it can be seen and heard that Street first located alcohol in Plaintiff's vehicle, ("Oh!! And she's got open containers! There's a Smirnoff Ice right there"), after Plaintiff had already been a victim of excessive use of force, and placed in physical restraints, for "unknown circumstances", and after Advanced EMT Conner had already been searching Plaintiff;s vehicle through the driver side front door.

38.    Street also alleges that he "located an Illinois Confinement Officer badge on the top of the radio in the front-center of the vehicle." Whereas Sgt Sedoris states in his probable cause affidavit that Plaintiff had this badge on or with her, and asked for personal courtesies multiple times due to her profession, which can also be proven false with the BWC.

39.    Per the body camera and dashcam footage, at approximately 00:49:30 Officer Street locates Plaintiff's prescribed allergy medication in her vehicle and decides to take it with him as he spoke with AMR staff.

40.    At approximately 00:49:35 Officer Christian says, "She's

probably going to jail for Resisting and OWI." Notwithstanding the
live footage showed that there had been absolutely no resisting by the
Plaintiff during these exchanges.

41.   At 00:49:40 while searching the vehicle, Officer
Street examines Plaintiff's prescription packaging paperwork
containing her full name, address, and date of birth month and year.
Immediately thereafter, Street gathers up the medication, retreats to
his department vehicle where he sits while using his computer at
00:50:06.

42.   At approximately 00:51:49, after camera footage shows
officers use force while pushing the Plaintiff onto the ambulance,
Officers Street and Christian come together to formulate the
conspiracy that Plaintiff was resisting during her arrest.

43.   Even after Plaintiff cooperates with officers, giving them
her full "legal" name and place of employment, in conjunction with
them admitting Plaintiff's name was all over the medication, mail, and
information in the vehicle - these same officers became increasingly
convinced that Plaintiff was lying about her name and where she worked
- another instance of discrimination due to plaintiff being a
masculine homosexual female.

44.   To be more specific, at 00:53:48 while talking to Officer
Street, Advanced EMT Conner tells Street, "I'll try to get an actual
name out of her." Officer Street responds by saying, he "just needs an
ID", and he "just needs a birthday really."

45.   At 00:54:30 AMR Conner, who is not a police officer with the
Evansville Police Department but rather an Advanced Emergency
Technician, can be seen opening Plaintiff's rear passenger door then
alerting Officer Street to a backpack inside the vehicle.

46.   AMR Conner is further seen opening and entering the rear

driver door of Plaintiff's vehicle. And at --:56:12 AMR Conner steps
back and Street takes his place in the rear door and begins to search.
Officer Christian arrives on the scene, and AMR Conner returns to the
ambulance.

47.   At 00:57"38 Officer Christian retreats from his department
vehicle and meets with Officer Street behind Plaintiff's vehicle while
holding his phone. He is looking at a photo on his phone, and shows it
to Street.
Christian: "Erica Bryant, is that her?"
Street: "I don't know. Do we have anything on her in our system?"
Christian: "Did she have her seatbelt on when you got her?"
Street: (some hesitation) "Ya, she did."

48.
Christian: "If she's lying about her name, that's another charge."
Street: "There's a bunch of mail registered to a Dylan in there."
Christian: "I think this is her."
Both officers go to the rear of the ambulance and look to see if the
photo is the Plaintiff.

49.   Moreover, the discriminatory remarks and intent to
maliciously charge and conspire against Plaintiff continued when
Christian said, "She did have a big ass knife under the seat", to
which Street replied, "Ya, I saw that".

50.   At 00:58:29 Christian is seen examining the prescription
papers that Plaintiff's full name, address, and birth month and year
are on. At 00:59:07 Officer Street discovers a badge on the top
console above the radio.
Street: "Huh, Yikes!"
At this time, AMR Conner walks behind Christian.
Conner: "Here's that ID."
Street: "Awesome." (shows badge to Christian) "Well here's this."
At 00:59:45

Christian: "Is she a cop or a correctional officer?"

Street: (Reads from badge) "Illinois Confinement Officer. She's a correctional officer in Illinois." Street takes the badge.

51.   At 00:59:50 Officer Street and Officer Christian meet with AMR Conner on the passenger side of the vehicle. Officer Christian had already taken a photo of it.

Christian: "Was that in her pocket or something?"

Conner: "Ya, I just asked her for it."

Christian: "Oh. Well she hates our guts!"

Conner: "Well ya. She hates men. I mean not that any of us are Surprised."

(Christian and Street laugh)

At 1:00:12

Conner: "Oh ya, here's your ID." (Hands it to the Street).

Conner: "But ya, if she's not going to cooperate, I said look, you're going to piss these guys off even more."

Christian: "She's going to jail."

Conner: "Yup. You know dumb people play dumb games and win dumb prizes. Nice Jeep though."

Street: "It is a super nice Jeep, it almost pained me to have to break that window."

52.   Officer Street liked the jeep so much, that he searched and seized items from the Plaintiff's vehicle under the false pretense of an "conducting an inventory", 20 separate times. Not only was Plaintiff's vehicle searched well over an appropriate amount to conduct an inventory, all parties who participated in these searches did it by general rummaging with the intention of further investigating, rather than a proper inventory search to protect Plaintiff's valuable items, protect the officers from allegations of missing items; as well as to check for weapons to ensure safety. (See Ex. F Attached)

53.   Despite the fact that the Police Defendants and Emergency

Defendants claim that Plaintiff was being aggressive and resisting arrest, the body camera footage completely refutes their allegation. Not once does the footage show or indicate Plaintiff resisted, intimidated or acted aggressively towards any of the defendants.

54.   In fact, at approximately 01:15:55 the footage reveals that AMR Steele admits that Plaintiff never threatened any harm upon her person. The body camera footage (01:14:03-01:17::50) further reveals that all of the defendants conspired together in order to secure charges of intimidation and/or resisting against Plaintiff.

55.   For instance, after ER Steele admitted that she was never threatened by Plaintiff, Officer Street followed up with, :"She was implying harm though…right?" But even then ER Steele followed with, "Implying that she will do whatever she needs to do to get away?" Even still, she never plainly stated nor implied that Plaintiff actually threatened her.

56.   It was not until Officer Street planted the seed of coercion that ER Steele claimed Plaintiff threatened her.

57.   Undoubtedly so, it was here that Street and Sedoris yet again coerced Steele and Conner to conspire to maliciously charge Plaintiff.
Street: "And you guys took that as……. (pause)
Steele: "Ya."
Conner: "Yup!"
Street: "Understood."

58.   More importantly, the body-worn camera footage (01:14:03 through 01:17:50) unequivocally reveals the willingness of all defendants to boldly conspire together in order to bring charges of intimidation and/or resisting against Plaintiff.
    Conner: "It is what it is. Like you said, it was implied."
    Street: "Hey, she wants to act a fool…(cut off by Sedoris)
    Sedoris: "She wants to act like that, we will just keep tagging

charges on."

59.   Furthermore, it also shows the willful intent to maliciously charge the Plaintiff per Sergeant Sedoris's previously mentioned statement.

60.   Once Plaintiff was secured in the ambulance with Officer Chrisitan, Street, Sedoris, Steele and Conner all gathered together and further discriminated and joked about threats they had made to Plaintiff to voluntarily drug her without her consent.

61.   In response, Plaintiff told Conner that she wanted his threat in writing.

62.   In an obvious retaliatory intent, stemming from Plaintiff expressing in the ambulance that she wanted a threat from Conner to voluntarily drug Plaintiff without her consent in writing, Conner told Street, Steele, and Sedoris about this encounter, and all of them began to joke and laugh about threats made to Marshall and inflicting harm upon her.

At approximately 01:17:10:

Steele: "I tried to tell her, when she was like, ""I'm going to get out of here and I'm going to run."" I was like, I will put you down faster than you even know what hit you."

(Sedoris, Street, and Conner are all laughing.)

Conner: "I just told her, we're going to put you to sleep if you keep this shit up. She's like, ""I want that in writing."" Ok." (Conner throws hands up, and smirks as a replication of his reaction to Plaintiff's response.)

Steele: "Ya, you ever taken 650 milligrams of Ketamine to a muscle before?!"

Conner: "DA-DOINK!!! YOU'RE GOING TO SKITTLES LAND!!!"

(All laughing)

Steele: "If it can put a horse down, it'll put down a…. (inaudible)."

[Assumably another discriminatory remark directed towards

Plaintiff, in furtherance of the defendants' violation of
Plaintiff's rights as discussed below.]

63.   Ironically so, Officer Street alleged in his affidavit yet
another false statement, when he says that Plaintiff threatened to sue
Conner after Conner threatened to "send her to skittles land".

64.   Once Plaintiff was secured in the ambulance, Officer Street
followed, and Officer Christian remained with her during transport to
Midtown hospital. At one point, Officer Christian asked Plaintiff,
"Why are you confused on why you are being arrested?" With no
hesitation, the Plaintiff responded by saying, "I'm not confused on
why I'm being arrested. I'm confused about how I was sitting there
doing nothing and he came in there and grabbed me like that." He being
Sergeant Sedoris.

65.   Here, Plaintiff is referring to the excessive force she
endured at the hands of Sergeant Sedoris. At 01:14:27 Sedoris charged
onto the ambulance and without any justification can be seen at
01:14:32 per BWC aggressively grabbing Plaintiff's left arm and
forcibly pulling it backwards. (See Ex. G Attached)

66.   After being evaluated and cleared by the hospital, Plaintiff
was transported to the Vanderburgh County Jail.

67.   Once Plaintiff was transported to the Vanderburgh County Jail,
Sergeant Sedoris made contact with her place of employment (Illinois
Department of Corrections) informing Plaintiff's fellow staff in the
armory, shift supervisor, and direct supervisor that she had been
arrested and charged with "2 counts of Felony Intimidation, Resisting
Arrest, and Operating a Vehicle While Intoxicated." He also willfully
stated consistent defamatory comments about Plaintiff by telling those
same supervisors that Plaintiff was "fighting the police" and that
Plaintiff "asked for personal courtesy multiple times due to her
profession". (See Ex. H and I Attached)

68.   Then, contrary to Evansville Police Department's "Body Worn Camera Request" policy and procedure, the city of Evansville and/or Sergeant Sedoris erroneously gave Plaintiff's employer access to the BWC footage of the incident while the investigation and judicial proceedings were still ongoing. (See. Ex. J & K Attached)

69.   The Evansville Police Department also erroneously gave Plaintiff's employer access to her private personal information, due to a meeting Plaintiff was required to have with the Warden of her place of employment before being allowed to return to her job. Plaintiff was suspicious of BWC being sent to her employer at the conclusion of this meeting, because it arose from specific comments made about "the blonde" on scene, who happened to be Plaintiff's romantic partner, by the Warden during the meeting that could only be garnered from viewing the BWC footage.(See Ex. L and M Attached)

70.   To further add, after Plaintiff received notice of the disciplinary hearing, a footage review, and footage confiscation slips from internal affairs and the disciplinary board at her place of employment, this caused her to suffer extreme embarrassment, severe anxiety, degradation, fear, invasion of privacy of personal life, emotional distress, a damaged reputation, and humiliation from the malicious act of releasing the BWC footage to the Plaintiff's employer, supervisors, and co-workers, and now having the knowledge that they had viewed the BWC and Dash Camera footage.

71.   Most importantly, EPD had an established procedure that: "BWC recordings that are evidence in an ongoing investigation, judicial or administrative proceeding, are not public records until either the matter is concluded or, in the case of a criminal proceeding, the evidence is submitted in a public forum (filed with the court or submitted in open court). Such recordings will not be released until they become public."(See Ex. N Attached)

72.   Once Plaintiff's place of employment (IDOC) was informed of her pending charges and presented with the BWC footage on 9/2/2022 (before she had even had her initial hearing in court), her employer launched its own investigation and subsequently found Plaintiff "Violated Department Rule 120, Administrative Directive 03.02.108: Standards of Conduct, and Illinois Administrative Code 302 due to being arrested and charged with Intimidation, Resisting Law Enforcement, and Operating a Vehicle While Intoxicated by the Evansville Police Department on 9/2/2022." (See Ex. O and P Attached)

73.   Moreover, it was Plaintiff's responsibility to report her arrest to her supervisor, but never had the chance to do so. This can be seen in, Illinois Department of Corrections Administrative Directive 03.01.108 which states,

> C. **Employees shall verbally report as soon as possible;** *submit a written report within five working days; and submit* **the final disposition,** *when available, to his or her supervisor who shall forward a copy of the written report and the final disposition to the Background Investigations Unit for any:*
>
> > (1)**Arrest, indictment or conviction for a felony or a misdemeanor, other than a minor traffic offense such as a parking ticket.  Driving under the influence is considered to be a reportable offense,** *not a minor traffic offense.* <u>*The report shall specify the facts forming the basis for the arrest, indictment or conviction and the name of the case.*</u>
> >
> > > (b) **Any employee who is charged and convicted of a felony shall be terminated from employment.**

74.   Hence, the BWC footage was not public record on 9/2/2022 or 9/6/2022, and thus, unavailable for release to IDOC prior to it being filed or submitted to Vanderburgh County Court during Plaintiff's ongoing criminal proceedings.

75.   Be that as it may, the BWC footage was never filed with the court or submitted as evidence in open court.

76.    In court, on 9/19/2022 at approximately 1:30 p.m.; the
Vanderburgh County Prosecutor dropped the two Felony Intimidation
charges, and one Operating a Motor Vehicle While Intoxicated charge
that were pending against Plaintiff. (See Ex. Q Attached)

77.    After entering a negotiated plea deal, the Resisting Law
Enforcement charge was reduced to Disorderly Conduct. And the second
Operating a Vehicle While Intoxicated charge will continue to show as
pending until Plaintiff completes a year long Drugs and Alcohol
Deferral (D.A.D.S.) Program. Upon completion of the program, the
Operating a Vehicle While Intoxicated charge will be dismissed. (See
Ex. R Attached)

78.    It wasn't until 10/31/2022 in court, that the prosecutor also
dropped the refusal allegation against Plaintiff, and settled on a
sixty day suspension with credit for time already endured (See Ex. Q
Attached)

79.    Furthermore, due to the wanton misconduct, false and
degrading/defamatory statements, and malicious charging done to
Plaintiff by Defendants, she was required to stay in Vanderburgh
County Jail for three days awaiting a bond for a **Felony**.

80.    Subsequently, Plaintiff was restricted from leaving the state
of Indiana although she lives and works in Illinois, and she had to
miss an additional day of work due to this restriction.

81.    By having to endure this intentional harm done to Plaintiff,
and being physically forced to confinement, Plaintiff had to miss two
shifts of rostered overtime (thirty-two hours), was placed in the lock
out book at her place of employment, which displayed Plaintiff's face
that all staff has access to see, was the soul source for degrading
rumors based off of the information received from Sedoris to staff,
she had to acquire a lawyer due to the malicious **Felony** charges, and

she lost her license for over sixty days, and suffered severe anxiety, emotional distress, and humiliation by not being able to drive herself to work. (See Ex. S, T, U, V, W, X & Y Attached).

82.   In addition, on 3/16/2023 the Plaintiff was suspended by her employer for one day without pay as a result of the incident. (See Ex. Z Attached) To note, Plaintiff received physical suspension rather than verbal discipline due to the malicious intent and charging of the Officer Defendants. (See Ex. ZZ & ZZZ Attached).

83.   A stop order was posted a second time displaying Plaintiff's face in the lock out book at her place of employment that all staff have access to see. (See Ex. U Attached)

84.   Due to the egregious and cruel intent to maliciously charge and cause overt harm to Plaintiff by the police defendants, a law bulletin of Plaintiff's **Felony** arrest is posted online, and can be accessed by the public just by typing her name in a search engine. (See Ex. AA Attached)

85.   Finally, Plaintiff is continuing to endure further harm and suffering each day, in the form of humiliation, degradation, defamatory remarks and rumors, a damaged reputation, severe anxiety, severe ADHD symptoms, physical stress, emotional distress, self-doubt, shame, and fear from the malicious actions of the Defendants' that are so blatantly cruel, overt, egregious, unreasonable, and a clear representation of abuse of power, that any reasonable person or officer would know these actions of misconduct clearly violate well-established constitutional rights.(See Ex. BB)

### CLAIM I - 42 U.S.C. §1983
### Fourth and Fourteenth Amendments
### Excessive Force by Police Defendants Street, Christian & Sedoris

86.   Plaintiff re-allege and incorporate paragraphs 1-85 as fully

stated herein.

87.   The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons against unreasonable searches and seizure.

88.   Officers Street, Christian and Sergeant Sedoris are each considered a "person" within the meaning of 42 U.S.C. §1983.

89.   The actions and/or omissions of Officers Street, Christian and/or Sergeant Sedoris were taken under color of State Law, based on their authority as officers with the Evansville Police Department.

90.   The actions or omissions of the POlice Defendants in using excessive physical force against Plaintiff and violating her bodily integrity constituted a violation and a deprivation of her rights under the Fourth and Fourteenth Amendments in the United States Constitution.

91.   The actions, omissions, and/or failures of officers Street, Christian, and/or Sergeant Sedoris caused Plaintiff to suffer harm. In fact, Plaintiff sustained a noticeable dark, sore bruise all about her left arm. (See Ex. D Attached)

92.   The actions or omissions of these Police Defendants were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

93.   The Police Defendants' conduct and failures are actionable under 42 U.S.C.§1983.

94.   The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights.

95.   As a result of Police Defendants' misconduct described in this count. Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, damaged reputation, physical and emotional pain and suffering, severe anxiety, and other grievous and continuing injuries and damages as set forth above.

## CLAIM II - 42 U.S.C.§1983
### Fourth and Fourteenth Amendment Violations
### Against Individual Defendants

96.   Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

97.   The Fourth Amendment to the United States Constitution guarantees that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

98.   As more fully described above, the police defendants allowed two non-law enforcement officers (a John Doe Firefighter and AMR Conner) to assist EPD during its search of Plaintiff's vehicle, violating her right against an unreasonable search and seizure; and her right to due process of laws.

99.   Because the Fourth Amendment prohibits unreasonable searches (as well as seizures), a search and seizure cannot ordinarily be conducted by a firefighter or american medical responder in place of a law enforcement officer during a traffic stop. Especially where items seized during this method of searching - as is the case here -- cannot be collected as evidence in a case since the people conducting the search are acting at the direction of law-enforcement officers. Thus, making this type of search and seizure unlawful.

100.   It is only in those rare cases where a person conducting a private search is not acting at the direction of law-enforcement officers that items found can be legally and/or lawfully considered as admissible physical evidence.

101.   The fourth amendment protects Plaintiff from the unlawful policy and procedure that granted these Police Defendants broad discretion in this case to allow other agency members to conduct a general, exploratory rummaging through Plaintiff's belongings.

102.   In addition, Plaintiff's right to due process was violated in this instance because the illegal search by non-law-enforcement officers deprived her of life, liberty, and property as guaranteed under the United States Constitution.

103.   The actions or omissions of these Police Defendants and

Emergency Defendants were made knowingly, intentionally, or with reckless disregard for Plaintiff's rights.

104. The Police Defendants and Emergency Defendants conduct or failures are actionable under 42 U.S.C. §1983.

105. The misconduct described in this Claim was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutionally protected rights.

106. As a result of both the Police Defendants and Emergency Defendants' misconduct described in this claim, Plaintiff suffered loss of liberty, great mental anguish, severe anxiety, humiliation, degradation, damaged reputation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### CLAIM III – 42 U.S.C §1983
### Fourth and Fourteenth Amendment – Failure to Protect
### Officers Street, Christian and/or Sergeant Sedoris

107. Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

108. Officers Street, Christian and Sergeant Sedoris are each considered a "person" within the meaning of 42 U.S.C.§1983.

109. The actions and/or omissions of these Police Defendants were taken under color of State law based on their authority and official position as officers with Evansville Police Department.

110. The Fourth Amendment to the United States Constitution provides that people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

111. The actions or omissions of Officers Street, Christian and/or Sergeant Sedoris constitutes a violation and deprivation of Plaintiff's rights under the Fourth and Fourteenth AMendments to the United States Constitution.

112. Each Police Defendant had a realistic opportunity to do something to prevent harm from occurring to Plaintiff.

113. Each Police Defendant failed to take reasonable steps to prevent harm from occurring to Plaintiff.

114.  The actions, omissions, and/or failures of Officers Street, Christian, and/or Sergeant Sedoris caused Plaintiff to suffer harm.

115.  The actions or omissions of these Police Defendants were made knowingly, intentionally, or write reckless disregard for Plaintiff's rights.

116.  The Police Defendant's conduct or failure are actionable under 42 U.S.C.§1983.

117.  The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

118.  As a result of Police Defendant's misconduct described in this claim, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, damaged reputation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above. (See Ex. _Attached)

## CLAIM IV - 42 U.S.C.§1983
### Fourteenth Amendment Due Process Clause Violation
### Against Individual Defendants

119.  Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

120.  The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law.

121.  As described more fully above, Defendant Sedoris and/or the City of Evansville will be acting under color of law and within scope of his employment as an Evansville Police Officer/ Sergeant, deprived Plaintiff of her protected rights under the Fourteenth Amendment to the U.S. Constitution.

122.  Through his misconduct, Defendant Sedoris and/or the City of Evansville deprived Plaintiff of a protected liberty interest. Indiana does not provide an adequate state law remedy; the Indiana Tort Claims Act absolutely immunizes governmental employees who initiate judicial proceedings acting within the scope of their employment.

123. The Defendants unlawfully released the BWC footage to the IDOC which became evidence used against Plaintiff during an internal (administrative) investigation by IDOC's Internal Affairs Unit — triggered by these Defendants.

124. The Defendants' improper actions caused Plaintiff to be erroneously subjected to an internal investigation by her place of employment where the BWC footage became primary evidence used to incriminate, inculpate and ultimately, suspect Plaintiff for one day with loss of wages. The internal investigation by Plaintiff's place of employment was commenced maliciously and intentionally, resulting in injury because the Defendants violated Plaintiff's right to due process by releasing the BWC footage without it ever being submitted before hand, to the Vanderburgh County Court as is required by EPD's established procedures regarding the release of BWC footage.

125. The misconduct described in this claim was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

126. As a result of Police Defendant's misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, damaged reputation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above. (See Ex. Attached).

127. The misconduct described in the Court by Police Defendants was undertaken pursuant to the policy and practice of the Evansville Police Department, in the manner more fully described below in Claim VI.

## CLAIM V – 42 U.S.C.§1983
### Conspiracy to Deprive Constitutional Rights
### Against Individual Defendants

128. Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

129. As described more fully above, the Police Defendants acting in

concert with the Emergency Defendants, Conspired amongst themselves to charge Plaintiff for crimes (intimidation and resisting) she did not commit and deprived her of her constitutional rights by maliciously causing Plaintiff's prosecution, by fabricating evidence that would be used to convict Plaintiff of resisting; and by withholding exculpatory information from Plaintiff's defense, as described above.

130. In the alternative, the Police Defendants, acting in concert with the Emergency Defendants, reached an agreement amongst themselves to frame Plaintiff for crimes she did not commit and deprive her of constitutional rights by maliciously causing Plaintiff's prosecution, by fabricating evidence that would be used to convict Plaintiff; and by withholding exculpatory information from Plaintiff's defense, as described above.

131. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition these co-conspirators agree amongst themselves to protect one another from liability from depriving Plaintiff of these rights.

132. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

133. The misconduct described in this claim was objectively unreasonable and was undertaken, intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence as it relates to the aforementioned charges

134. As a result of Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, severe anxiety, humiliation, damaged reputation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages. (See Ex. _Attached)

135. The misconduct described in this claim by the policy and practice of the Evansville Police Department, in the manner more fully, described below in Claim VI.

## CLAIM VI – 42 U.S.C.§1983

### Equal Protection: Discrimination Based on Sexual Orientation Against Individual Defendants

136. Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

137. The Fourteenth Amendment Equal Protection Clause protects the Plaintiff against both "sexual harassment be a state actor under color of state law." Locke v. Haessig, 778 F. 3d. 662, 667 (7th Cir. 2015(, and discrimination on the basis of sexual orientation, see Baskin v. Bogan, 76 F. 3d. 648, 654-55 (7th Cir. 2014); Schroeder v. Hamilton Sch. Dist., 282 F. 3d. 946, 950-51 (7th Cir. 2002). The BWC footage clearly reveals that both occurred here.

138. As described more fully above, the Police Defendants together with the Emergency Defendants violated Plaintiff's United States Constitutional right to equal treatment under the law when they unlawfully discriminated against the Plaintiff based on her sexual orientation.

139. The imposition of the remarks described above, as it relates to Plaintiff, who presents and portrays herself as a masculine homosexual female, serves to disrespect, degrade, harass and subordinate Plaintiff in violation of her protected right guaranteed by our constitution.

140. For all of the Defendants to say that the Plaintiff "hate men", as a joke amongst themselves then laugh about it was an act of discrimination against the Plaintiff. The Defendants' discriminatory misconduct is offensive, stereotypical and prejudicial toward Plaintiff.

141. Thus, the discriminatory actions of these Defendants violated Plaintiff's Fourteenth Amendment right because the Equal Protection Clause, like the Due Process Clause,prohibits this type of unjustified infringement on Plaintiff's constitutionally protected right as a

citizen of the United States to freely present and portray herself as
a masculine homosexual female.

142. As a result of these Defendant's misconduct described in this
Count, Plaintiff suffered loss of liberty, severe anxiety,
humiliation, degradation, harassment, damaged reputation, emotional
pain and suffering, and other grievous and continuing injuries and
damages.

### CLAIM VII - 42 U.S.C.§1983
### Municipal Liability
### Against Defendant City of Evansville

143. Plaintiff incorporates each paragraph of this complaint as if
fully restated herein.

144. Based on the plain meaning of the language in the EPD Use of
Force Policy; its Body Worn Camera Policy and/or policy against
discrimination, it is clear that the EPD failed to adequately train
their officers in these areas and this is unreasonable, was a
deliberate choice, and is not consistent with generally accepted
police practices regarding use of force; releasing body and dashboard
video and audio footage, and/or policy against discrimination.

145. Reasonable law enforcement agencies and officers know that law
enforcement supervision and training supports and reinforces policy.
Based upon EPD officers' conduct in this and other similar cases, it
is reasonable to conclude that the EPD's training on use of force does
not address the objective reasonableness standard nor does its
training address the policy and procedures for releasing BWC
video/audio, and/or zero tolerance for discrimination on the basis of
sexual orientation.

146. The city and EPD have final policy making authority with
regard to establishing written policies and training programs
governing the conduct of EPD officers performing policing functions on
behalf of the EPD.

147. The city and EPD established and/or approved EPD's written

policies and training governing the conduct of EPD officers performing functions. The written policies and training established and.or approved by the City and EPD and were the moving force behind Plaintiff's injuries.

148. At all times relevant, the city, the EPD, and its officers, policymakers, and supervisors, pursued policies, practices, and customs that were a direct and proximate cause of the unlawful and unconstitutional acts alleged here and were the result of deliberate indifference. The policies include but are not limited to:

    a. Failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers, including Street, Christian, and Sedoris, who are known or should have been known to engage in improper use of excessive force and/or discrimination;

    b. Employing a policy of fabricating accounts in police reports (probable cause affidavits), and statements for the public, all of which are designed to falsely exonerate officers and protect the EPD from potential civil liability.

    c. Creating and implementing procedures that allow for and promote the use of excessive force in unwarranted and under unjustified circumstances;

    d. Failing to properly use, maintain, monitor, and release body and dashboard video and audio recording equipment;

    e. Other failures yet to be discovered.

149. The City of Evansville and the EPD failed in 2022 and in years prior to providing adequate training to Defendants Street, Christian, Sedoris, and other officers. The City's failure to train Evasnville Police Officers proximately caused Plaintiff's job suspension, intimidation charges, resisting conviction, and her injuries,

150. The City's failure to train, supervise and discipline its officers effectively condones, ratifies, and sanctions that kind of misconduct that the Police Defendants committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and de facto policies, as alleged above.

151.  The police and practice described in the foregoing paragraphs were consciously approved by the City of Evansville Policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

152.  The City and EPD are vested with all the powers connected with an incident to the establishment, maintenance, appointment, removal, discipline, control, and supervision of its police force.

### CLAIM VIII - State Law Claim
### Intentional Infliction of Emotional Distress
### Against Individual Defendants

153.  Plaintiff re-allege and incorporate paragraphs 1-85 as fully stated herein.

154.  In the manner described more fully above, Defendants engaged in extreme and outrageous conduct. The Police Defendants and Emergency Defendants either intended that their conduct would cause severe emotional distress to Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff.

155.  The misconduct described in this Claim was undertaken with malice, willfulness, and reckless indifference to the rights of others.

156.  Notwithstanding, Plaintiff suffered from extreme embarrassment,invasion of privacy of personal life, emotional distress, a damaged reputation, lack of self confidence, degraded self esteem, and humiliation from the malicious act of releasing the BWC footage, and the defamatory comments made by Sedoris to multiple co-workers, and supervisors at her place of employment.

157.  As a proximate result of this misconduct undertaken within the scope of Defendants' employment, Plaintiff suffered injuries, including but not limited to severe emotional distress.

## CLAIM IX - State Law Claim
### Respondeat Superior
### Against Defendants City of Evansville and American Medical Response

158.  Plaintiff re-allege and incorporate paragraphs 1-85 is fully steed herein.

159.  The City of Evansville and the American Medical Response are each liable for all common law torts their employees commit in the scope of their employment under the doctrine of respondeat superior.

160.  At all times discussed in and relevant to this complaint, the Police Defendants and Emergency Defendants acted within the scope of their employment. If the Defendants are found liable to the Plaintiff for damages, the City of Evansville and American Medical Response are liable to the Plaintiff under the doctrine of respondeat superior.

## CLAIM X - State Law Claim
### Indemnification
### Against Defendants City of Evansville and American Medical Response

161.  Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

162.  Indiana law provides that public entities are directed to pay any tort judgment or settlement for compensatory damage for which employees are liable within the scope of their employment activities.

163.  Defendants are or were employees of the City of Evansville or American Medical Response, Inc., who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff Dylan Marshall respectfully requests that this Court enter judgment in her favor against Defendants, awarding compensatory damages, punitive damages, court fees, the cost of outside counsel if it becomes necessary and Plaintiff is able to afford the services of such representation in the future, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Dylan Marshall hereby demands a trial by jury pursuant
to Federal Rule of Civil Procedure 38(b) on all issues triable.


Respectfully Submitted,

/s/ _____
Pro Se